# FOR PUBLICATION

ATTORNEY FOR APPELLANTS
DEREK ASKLAR AND
PAULINE ASKLAR**:**

**THOMAS A. MANGES**
Roby & Manges
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
EMPIRE FIRE & MARINE
INSURANCE COMPANY
d/b/a ZURICH:

**DIANA C. BAUER**
Carson Boxberger, LLP
Fort Wayne, Indiana



**FILED**

Nov 15 2012, 9:19 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEREK ASKLAR and PAULINE ASKLAR, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1204-CT-170 |
| | ) | |
| DAVID GILB, PAUL GARRETT SMITH | ) | |
| d/b/a P.H. ONE TRUCKING, EMPIRE FIRE | ) | |
| AND MARINE INSURANCE CO., | ) | |
| d/b/a ZURICH, | ) | |
| | ) | |
| Appellees-Defendants, | ) | |
| | ) | |
| _____ | ) | |
| TRAVELERS INDEMNITY COMPANY OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Intervenor. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Stanley A. Levine, Judge
Cause No. 02D01-1003-CT-130

**November 15, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Derek and Pauline Asklar ("the Asklars") appeal the trial court's decision to grant summary judgment in favor of Empire Fire and Marine Insurance Company ("Empire"). The Asklars contend that the trial court erred in holding that as a matter of law, Georgia law governs this dispute and that Empire's uninsured/underinsured motorist coverage limit was only $75,000. Finding that Indiana law should apply in this case, but that Empire's uninsured/underinsured motorist coverage limit is still only $75,000, we affirm in part and reverse in part.

**Facts and Procedural History**

On July 30, 2008, Derek Asklar was employed by Premium of North Carolina, and his services were being leased by Werner Transportation Services, Inc., a Georgia corporation. He was driving a semi-tractor trailer, owned by Schilli Leasing, an Indiana company, westbound on I-68 in West Virginia. The tractor-trailer was registered, principally garaged, and licensed in Indiana. Appellant's App. p. 199. While stopped at the bottom of an exit ramp, Derek's tractor-trailer was hit from behind by another semi truck driven by David Gilb in the course of his employment with One Trucking. As a result of the collision, six other people were injured, Derek required medical treatment, including neck surgery, and he has been unable to work since. Gilb's truck was insured by Northland Insurance Company and had a single liability limit of $1,000,000. Because of all of the claims against Gilb resulting from this collision, Derek also attempted to recover under Werner Transportation's uninsured/underinsured (UM/UIM) motorist coverage.

2

Werner Transportation's liability insurance was with Empire. It provided $5,000,000 in liability coverage, but only $75,000 in UM/UIM motorist coverage. *Id.* at 88. John Werner, in writing and on behalf of Werner Transportation, elected to reduce the amount of UM/UIM coverage under its policy to $75,000. Appellee's App. p. 16-20.

The Asklars brought suit against Gilb, One Trucking, Northland Insurance Company, and Werner Transportation's insurance company, Empire, alleging negligence and seeking compensation for his injuries. Empire was joined in the lawsuit to determine how much of its UM/UIM coverage was available to Derek to fully compensate him for his injuries. After filing the lawsuit, the Asklars filed a motion for partial summary judgment against Empire, alleging that the UM/UIM coverage limit should be $5,000,000 under Indiana law. Empire filed a memo in opposition and filed its own motion for summary judgment, alleging that Georgia law applied to this case and the UM/UIM coverage was in accordance with the law at $75,000. The trial court held a hearing on the cross motions for summary judgment and granted Empire's motion and denied the Asklars' motion.

The Asklars filed a motion to correct errors, and Empire filed a statement in opposition. The trial court held a hearing on the motion to correct errors and entered an order denying the motion.

The Asklars now appeal.

### Discussion and Decision

There are three arguments raised on appeal: (1) whether the Asklars waived the argument that Georgia law does not apply by admitting in open court that it applied; (2)

3

whether the trial court erred in granting summary judgment for Empire and finding that Georgia law applied; and (3) whether the trial court erred in granting summary judgment for Empire and finding its UM/UIM coverage limit to be $75,000.

## I. Waiver

Empire contends that the Asklars have waived the argument that Georgia law does not apply to this case because his attorney admitted in open court that Georgia law did apply. A judicial admission is "a clear and unequivocal *admission of fact*, or a formal stipulation that *concedes any element of a claim or defense . . . .*" *Bandini v. Bandini*, 935 N.E.2d 253, 265 (Ind. Ct. App. 2010) (emphases added).

In this case the following exchange took place between the trial court judge and the Asklars' attorney during a discovery motion hearing:

| | |
|---|---|
| THE COURT: | It's not a coverage issue. It's not whether they gave notice and all of those contractual questions. The question is to the amount of the underinsured motorist and whether there was a proper waiver, correct? |
| MANGES: | Correct |
| THE COURT: | Under Georgia law? |
| MANGES: | Yes, absolutely. |

Appellee's App. p. 47. Empire argues that this constitutes a judicial admission. We disagree.

The statement made by the Asklars' attorney at the hearing was neither a factual admission nor an element of the claim being asserted; this was a statement dealing with the potential choice-of-law issue that may arise in this case. Because this statement does not fall under the definition of a judicial admission, we find that the Asklars' attorney did

4

not make a binding admission that Georgia law applies in this case, and the issue is therefore not waived for our review.

## II. Summary Judgment

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind. 2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007).

### A. Application of Georgia Law

Finding that the Asklars have not waived the argument that Georgia law does not apply, we now must address the issue of whether the trial court erred in granting summary judgment for Empire and finding that Georgia law applies. The Asklars contend that the trial court erred in granting summary judgment in favor of Empire, arguing that Indiana law is applicable in this situation.

Indiana Code section 9-25-4-1(b) deals with the financial requirements of Indiana drivers and provides in relevant part:

> A person may not:
>     (1) register a motor vehicle;
>                     *     *     *     *     *
> in Indiana if financial responsibility is not in effect with respect to the motor vehicle under section 4 of this chapter, or the person is not otherwise insured in order to operate the motor vehicle.

5

Indiana Code section 27-7-5-2 addresses UM/UIM insurance and states that it applies to "any motor vehicle registered or principally garaged in this state." While we recognize that *Stonington Insurance Company v. Williams*, 922 N.E.2d 660, 665 (Ind. Ct. App. 2010), provides a five-factor analysis for choice-of-law issues, looking at these two statutes together, we find that in this case we need not reach this analysis because there is no choice-of-law issue. *But see id.* (court engaged in a five-factor analysis to determine which state had the most significant relationship to the parties and the transaction, considering: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties). Any vehicle that is registered or principally garaged in Indiana must comply with Indiana insurance requirements, regardless of the fact that Werner Transportation is a Georgia corporation.

Since the tractor-trailer Derek was driving was registered, principally garaged, and licensed in Indiana, it therefore must meet the financial responsibility requirements set out in Indiana Code section 9-25-4-4 and the UM/UIM requirements set out in Indiana code section 27-7-5-2. Indiana law applies in this case, and the trial court erred in holding that the Georgia statute was the applicable law.

*B. Amount of Coverage*

Indiana Code section 9-25-4-4 provides, in relevant part, that "A motor vehicle liability policy under this article must contain the terms, conditions, and provisions

6

required by statute and must be approved by the state insurance commissioner."  Ind. Code § 9-25-4-4(b).

One of those requirements is set forth in Indiana Code section 9-25-4-5 and determines the amount of minimum financial responsibility each driver must have. Another statutory requirement is UM/UIM insurance.  This requirement is set forth in Indiana Code section 27-7-5-2, which states in relevant part:

> (a) [T]he insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy . . . .

The amount of UM/UIM insurance must be "at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured." *Id.*

In this case, Empire's bodily injury liability limit was $5,000,000, so that would be Werner Transportation's required UM/UIM liability coverage under Indiana law if it had not rejected such coverage.  In order to reject UM/UIM coverage, the rejection must be in writing and specify:

> (1) that the named insured is rejecting:
>> (A)  the uninsured motorist coverage;
>> (B)  the underinsured motorist coverage; or
>> (C)  both the uninsured motorist coverage and the underinsured motorist coverage;
> that would otherwise be provided under the policy; and
>> (2)  the date on which the rejection is effective.

7

*Id.*  Werner signed a form rejecting the full UM/UIM coverage under Werner Transportation's Empire insurance policy each April before the policy period began on May of that year.  Appellee's App. p. 14-20.  He elected to maintain coverage in the amount of $75,000 instead of $5,000,000, and he signed, dated and returned the form, indicating the time at which the rejection of the full policy was to be effective.  These rejections were explicit and in accordance with Indiana Code section 27-7-5-2.  They also follow the *DePrizio* rule, which indicates that if an insurance company wants to eliminate any or all UM/UIM coverage, it should either:

> 1) secure[] the written waiver of coverage required under the statute and include[] the waiver within the policy prior to the commencement of coverage; or 2) if [the insurance company wants] to remove UM/UIM coverage during the policy's term, it should [] propose[] a modification to such effect and offer[] to reduce the premium to reflect the removed coverage.  In either case, it would be clear that the existence or nonexistence of UM/UIM coverage was a negotiated term of the policy.

*Liberty Mut. Fire Ins. Co. v. Beatty*, 870 N.E.2d 546, 551 (Ind. Ct. App. 2007).  Here, the rejection of the UM/UIM coverage took place before the policy period began, allowing it to be considered a negotiated term of the policy, as required by Indiana case law.

We therefore find that the trial court did not err in granting summary judgment to Empire and finding that its UM/UIM coverage limit was $75,000.

Affirmed in part and reversed in part.

MATHIAS, J., and BARNES, J., concur.

8